## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ORALIA STONE, INDIVIDUALLY AND )
AS PERSONAL REPRESENTATIVE OF  )
THE ESTATE OF THOMAS O. STONE,  )
                               )
         Plaintiff,           )
                               )
        v.                  )      Civil Action No. 13-470-SLR-SRF
                               )
ASBESTOS CORPORATION LTD.,   )
et al.,                           )
                               )
        Defendants.       )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this diversity personal injury action is a Motion to Remand to State Court ("Motion to Remand" or "Motion") filed individually by Oralia Stone ("Plaintiff") and on behalf of decedent Thomas O. Stone ("Mr. Stone"), on the grounds that the notice of removal filed by Defendant Foster Wheeler Energy Corporation ("Foster Wheeler") was untimely in light of the requirements of 28 U.S.C. § 1446(b). (D.I. 27) Foster Wheeler opposes Plaintiff's Motion. (D.I. 36) For the reasons that follow, I recommend that the Motion to Remand be GRANTED.

### II.    BACKGROUND

#### A.  The Delaware Action

Plaintiff filed this asbestos personal injury action in the Superior Court of Delaware on April 23, 2012. (D.I. 1, Ex. A) In the Complaint, Plaintiff asserts state law causes of action based on Mr. Stone's alleged exposure to asbestos while working in different settings between 1958 and 1990. (*Id.*, Ex. A) The Complaint provides, in pertinent part:

1

> a)    Plaintiff'S [sic] DECEDENT THOMAS STONE experienced occupational and bystander exposure to asbestos while working as a mechanic from 1970 to 1990. THOMAS STONE was exposed to asbestos-containing products and equipment including, but not limited to, asbestos-containing brakes, clutches and gaskets.
>
> b)    THOMAS STONE experienced occupational and bystander exposure to asbestos while Serving as a United States Coast Guard from 1958 to 1964, THOMAS STONE was exposed to asbestos-containing products and equipment including, but not limited to, asbestos-containing pumps, valves, joint compound, packing, gaskets, insulation, boilers, turbines, cooling towers, drywall, pipe, paint, HVAC equipment.
>
> 28.    THOMAS STONE was exposed to asbestos and/or asbestos-containing products which were mixed, mined, manufactured, distributed, sold, removed, installed and/or used by the Defendants. . . . .

(*Id.*, Ex. A ¶¶ 27-28) Foster Wheeler was served with the Complaint on July 18, 2012. (D.I. 29, Ex. E; D.I. 36 at 2)

On February 21, 2013, Foster Wheeler received a copy of Mr. Stone's military records (the "Military Records"). (D.I. 1, Ex. B; D.I. 36 at 3) The Military Records indicate, in relevant part, that Mr. Stone served in the United States Coast Guard and aboard the USCGC Chautauqua between 1962 and 1963. (D.I. 1, Ex. B)

On March 25, 2013, Foster Wheeler filed its notice of removal in this court, contending that it first ascertained that the state court action was removable under 28 U.S.C. § 1442(a)(1), the federal officer removal statute, from the content of the Military Records. (D.I. 1 at 1-2; *see also* D.I. 36 at 2, 8, 10)

On April 23, 2013, Plaintiff filed the pending Motion to Remand, asserting that Foster Wheeler's notice of removal was untimely filed. (D.I. 27)

## B. The California Action

Prior to initiating the present case, Plaintiff filed a complaint against Foster Wheeler, among other defendants, in the Superior Court of California on March 1, 2011 (the "California Action"). (D.I. 29, Ex. A) The complaint in the California Action, like the pending Complaint,

2

asserts various causes of action based on Mr. Stone's alleged exposure to asbestos. (*Id.*, Ex. A) Plaintiff's pleadings in the California Action included an exhibit that lists locations and dates for Mr. Stone's alleged exposure to asbestos while he was employed by the U.S. Coast Guard. (*Id.*, Ex. A at 30) The exhibit identifies one location of exposure as "CGC CHAUTAUQUA (WPG-41)," from 1962-1963. (*Id.*)

Foster Wheeler filed a motion to stay the action until it could be refiled, on the grounds of forum non conveniens. (*Id.*, Ex. C) The Superior Court of California granted Foster Wheeler's motion on March 15, 2012. (*Id.*) Plaintiff subsequently voluntarily dismissed the California Action (*see* D.I. 36 at 10), and filed the present action in the Superior Court of Delaware on April 23, 2012. (D.I. 1, Ex. A)

## III.    LEGAL STANDARDS

The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof of any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

In order to remove pursuant to Section 1442(a)(1), a defendant must establish the following:

(1) it is a "person" within meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;
(3) it raises a colorable federal defense; and
(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)). *See also Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220,

3

223 (D. Del. 2009). Unlike the general removal statute, 28 U.S.C. § 1441, which courts must construe strictly in favor of remand, the federal officer removal statute is to be "broadly construed," in order to effectuate Congress' intent that federal officers have access to a federal forum in which they can litigate the validity of their defense of official immunity. *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011). Despite this broad construction, it is well-settled that the party removing an action to federal court bears the burden of proving that removal is appropriate. *Kirks*, 654 F. Supp. 2d at 222 (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

While Section 1442 governs the substantive requirements for federal officer removal, the timeliness of removal is dictated by Section 1446. Section 1446(b) provides: "the notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. §1446(b)(1). If the basis for removal is not set forth in the initial pleading, however, a defendant must remove within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."[1] 28 U.S.C. § 1446(b)(3).

In analyzing the timeliness of removal, courts must consider whether the document at

---

[1] The thirty-day removal limitation is meant to

> "deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court."

*Mims v. 84 Lumber Co.*, 2013 WL 4775306, at *2 n.2 (D. Del. Sept. 6, 2013) (quoting *Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631 (7th Cir. 2007)).

4

issue "informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present."[2] *Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d Cir. 1993), *overruled on other grounds*, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d at 740. *See also Mims v. 84 Lumber Co.*, 2013 WL 4775306, at *2 (D. Del. Sept. 6, 2013), *report and recommendation adopted sub nom. Mims v. Foster Wheeler Energy Corp.*, 2013 WL 6571816 (D. Del. Dec. 12, 2013). If so, receipt of the document triggers the thirty-day clock for removal under Section 1446. *Foster*, 986 F.2d at 53-54.[3]

The analysis for determining whether the document at issue provided sufficient notice of removability is an objective one: "'the issue is not what the defendant knew, but what the relevant document said.'" *Id.* at 53 (quoting *Rowe v. Marder*, 750 F. Supp. 718, 721 (W.D. Pa. 1990)). As with jurisdiction, the defendant bears the burden of showing the timeliness of removal. *See Mims v. 84 Lumber Co.*, 2013 WL 4775306, at *2 (citing *Scearce v. 3M Co.*, 2013 WL 2156060, at *3 (D.N.J. May 16, 2013)).

---

[2] The timeliness of removal is an issue of federal law. *In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d at 739.

[3] In *Foster*, the Third Circuit held that the thirty-day window for removal is triggered only when the four corners of the initial pleading informs a defendant that all elements of federal jurisdiction are present. *Foster*, 986 F.2d at 53. However, this objective standard was articulated in the context of the first thirty-day removal period referenced in Section 1446(b)(1). The Third Circuit has not yet had occasion to determine what test applies to assess when the second thirty-day window under Section 1446(b)(3) is triggered. *Bouchard v. CBS Corp.*, 2012 WL 1344388, at *5 (E.D. Pa. Apr. 17, 2012); *see also Scearce v. 3M Co.*, 2013 WL 2156060, at *3 n.3 (D.N.J. May 16, 2013). Nevertheless, the Third Circuit in *Foster* recognized that removal inquiries should be confined to "court-related documents," and should "not involve courts in arduous inquiries into [a defendant's] state of mind." *Foster*, 986 F.2d at 53. Accordingly, the court assumes that the objective *Foster* standard applies in evaluating the timeliness of removal under Section 1446(b)(3).

5

## IV. DISCUSSION

Foster Wheeler is "a manufacturer of boilers and economizers for the United States Navy, among other equipment." (D.I. 36 at 1) In support of removal, Foster Wheeler contends that, "in the manufacture and sale of boilers and auxiliary equipment for the Navy, including all aspects of warnings associated with those pieces of equipment," it acted under the direction of an officer or agency of the United States within the meaning of Section 1442(a)(1). (*Id.* at 3; D.I. 1 ¶ 7) Thus, Foster Wheeler maintains that it is entitled to a "government contractor immunity" defense to Plaintiff's claims. (D.I. 1 ¶ 9; D.I. 36 at 5)

Plaintiff does not contest Foster Wheeler's assertion that it has met the requirements necessary to remove this action pursuant to the federal officer removal statute. Rather, Plaintiff argues that Foster Wheeler's notice of removal was untimely because Foster Wheeler failed to remove the case within thirty days after receiving the Complaint. (D.I. 28 at 1) According to Plaintiff, the grounds for removal should have been clear to Foster Wheeler from the "unambiguous allegations" of the Complaint, which "put Foster Wheeler on notice . . . that it was being sued for exposure to its products used by [Mr. Stone] while in the United States Coast Guard." (*Id.* at 4) Plaintiff further argues that Foster Wheeler already was on notice of the removability of this action based on its receipt of pleadings in connection with the California Action, which included allegations similar to those in the present case, and disclosed the ships upon which Mr. Stone served and the relevant dates of such service. (*Id.*; D.I. 29, Ex. A at 30)

Foster Wheeler counters that the Complaint is too "vague and ambiguous" to provide a sufficient basis for removal. (D.I. 36 at 2) According to Foster Wheeler, removability was discernable only after it received the Military Records. (*Id.*) The Military Records allowed Foster Wheeler to "discover[] that it manufactured and designed marine boilers pursuant to strict and

6

exacting Navy specifications for use on [a vessel upon which Mr. Stone served]. It was this particular piece of information . . . that created a basis for Foster Wheeler's removal." (*Id.*)

Foster Wheeler disputes Plaintiff's argument that it was on notice of the removability of this action based on the documents it received in connection with the California Action. Foster Wheeler cites various case authorities for the proposition that, when analyzing whether a "paper" provides notice of removability under Section 1446(b)(3), the inquiry is confined to documents generated within the specific state court proceeding that has been removed to federal court. (*See id.* at 10-12)

The court finds that, while removal would have been inappropriate based only on the allegations contained in the Complaint, the information added by the Military Records is also inadequate to justify removal.[4] It is Foster Wheeler's burden to "sufficiently explain why it is that removability could only be ascertained at the time of removal." *Mims v. Foster Wheeler Energy Corp.*, 2013 WL 6571816, at *1 (citing *Scearce*, 2013 WL 2156060, at *5). As discussed below, Foster Wheeler has failed to meet this burden.

According to Foster Wheeler:

> [It] has been involved in asbestos litigation for many years and has avoided filing frivolous Removals by choosing to be diligent and *only removing a case when it was certain that its boilers or economizers were on a Navy ship at issue and that plaintiff was alleging exposure to asbestos from such Foster Wheeler equipment.* The allegation in the Complaint was entirely incomplete and insufficient, and did not end the inquiry as to whether Foster Wheeler's equipment were present on any ships aboard which Mr. Stone may have served. *There were hundreds, if not thousands, of Navy ships built and repaired at various shipyards and many did not contain Foster Wheeler boilers.* Until Foster Wheeler knows, at the very least, the identity of the Navy ship(s) at issue, it cannot, in good faith, make a removal determination. *The scant information provided by plaintiff in the Complaint did not put Foster Wheeler on notice that*

---

[4] Because the information included in the Military Records is inadequate to justify removal, regardless of when it was received, the court need not address whether the pleadings from the California Action provide notice of removability in connection with the present action.

7

> *exposure to Foster Wheeler boilers*, specified by the Navy, manufactured by
> Foster Wheeler in accordance with strict Navy specifications and manufactured at
> and under the direction of the Navy, *was the source of any alleged exposure in
> this action. Accordingly, until plaintiff served Mr. Stone's military records, which
> identified the USCGC Chautauqua as a ship on which he served, Foster Wheeler
> had no good faith basis to remove this action to this Court*.

(D.I. 36 at 9-10 (emphasis added)) Foster Wheeler's argument focuses on a lack of information

in the Complaint concerning the particular ships upon which Mr. Stone was exposed to asbestos,

the specific asbestos-containing products connected to such exposure, and the manufacturers of

such products.

The problem with Foster Wheeler's argument is twofold. First, Foster Wheeler does not

fully explain why it needed to know the above information in order to ascertain removability.

Although Foster Wheeler sufficiently explains why it needed to know the identities of the

particular ships on which Mr. Stone worked,[5] it has failed to establish why it needed to know the

specific Foster Wheeler equipment at issue in order to ascertain removability. For example,

Foster Wheeler has not asserted that it supplied equipment to the United States that would not

have been subject to a federal contractor defense. Foster Wheeler simply argues that Plaintiff's

allegations are too vague. While Foster Wheeler may have provided various products to the

United States, some of which would not have justified federal officer removal, it is Foster

Wheeler's burden to make that showing in order to establish the timeliness of removal.

Second, Foster Wheeler does not adequately explain why the information in the Military

Records provides sufficient notice of its government contractor defense. More specifically, the

Military Records, which Foster Wheeler cites as being sufficient to put it on notice of a federal

---

[5] With respect to the identities of particular ships on which Mr. Stone worked, Foster Wheeler explains that "[t]here were hundreds, if not thousands, of Navy ships built and repaired at various shipyards," and while some of those ships contained Foster Wheeler equipment, others did not. (D.I. 36 at 9) Thus, Foster Wheeler needed to know the identities of the ships at issue in order to determine whether the particular ships on which Mr. Stone worked actually contained Foster Wheeler equipment.

8

defense, do not provide the missing information Foster Wheeler claims was critical to its ability to ascertain the availability of the defense. The only new facts included in the Military Records are the identities of the ships upon which Mr. Stone served and the respective dates of such service. (D.I. 1, Ex. B) However, the Military Records do not expressly disclose Plaintiff's contention that Mr. Stone was exposed to asbestos while assigned to those ships, much less link Mr. Stone's military service to particular products designed, manufactured, or supplied by Foster Wheeler (or any product or manufacturer, for that matter).

Foster Wheeler has failed to meet its burden of establishing the timeliness of removal. *See Mims v. Foster Wheeler Energy Corp.*, 2013 WL 6571816, at \*1 (citing *Scearce*, 2013 WL 2156060, at \*5). Furthermore, it is not apparent from the record that Mr. Stone worked on any Foster Wheeler equipment, let alone on such equipment aboard any military ships. Consequently, Foster Wheeler's removal of this action was untimely pursuant to Section 1446(b).

This conclusion is supported by decisions from this court and other districts within the Third Circuit. For example, in *Mims v. 84 Lumber Co.*, this court granted the plaintiffs' motion to remand because the removing defendant, Foster Wheeler, failed to meet its burden of establishing the timeliness of removal. *Mims*, 2013 WL 4775306, at \*7. In support of removal, Foster Wheeler had offered the following explanation, similar to the one put forward here:

"The allegation[s] in the Complaint and Interrogatory Answers were entirely incomplete and insufficient, and did not end the inquiry as to whether Foster Wheeler's boilers were present on any Navy ships aboard which [the plaintiff] worked. *There were hundreds, if not thousands, of Navy ships built and repaired at various shipyards and many did not contain Foster Wheeler boilers. Until Foster Wheeler knows, at the very least, the identity of the Navy ship(s) at issue, it cannot, in good faith, make a removal determination.* . . . Accordingly, until plaintiff *specifically testified to being exposed to asbestos from Foster Wheeler boilers on surface ships at [Charleston Naval Shipyard]*, Foster Wheeler had no good faith basis to remove this action to this Court."

*Id.* at \*5 (alterations in original) (citation omitted).

9

The court observed that Foster Wheeler's argument "appears to center on a lack of information in those prior documents as to *the particular ships* on which [the plaintiff] worked at the Charleston Naval Shipyard, as some of those ships contained 'Foster Wheeler boilers,' while some 'did not.'" *Id.* (citation omitted). However, the court explained that "the deposition testimony excerpt put forward by Foster Wheeler[] . . . does *not* specifically identify any particular Navy ship that [the plaintiff] worked on at the Charleston Naval Shipyard." *Id.* at *6. Thus, the court held that Foster Wheeler failed to meet its burden of showing the timeliness of removal because the source that it "cite[d] as being sufficient to put it on notice of a federal defense [did] not provide the missing information that it [claimed] was essential to its ability to ascertain the availability of the defense." *Id.*

In the present case, although the Military Records identify the ships upon which Mr. Stone served and the respective dates of such service, they do not indicate that Mr. Stone was exposed to asbestos while assigned to those vessels, nor do they link Mr. Stone's service to particular products or product manufacturers. Foster Wheeler fails to explain how the identification of a specific vessel goes further than the pleadings to convey that Mr. Stone performed work on Foster Wheeler naval marine boilers at the direction of a federal officer.[6]

---

[6] Notably, in challenging remand in *Mims v. Foster Wheeler Energy Corp.*, Foster Wheeler acknowledged that it was not necessary to know the specific ship where the alleged asbestos exposure occurred. Specifically, in its objection to the magistrate judge's recommendation to remand, Foster Wheeler reasoned:

> [P]erhaps unclear in Foster Wheeler's Opposition, a key piece of information obtained at Mr. Mims's deposition, that was absent from the Complaint/Responses, was that Mr. Mims was alleging exposures to *Foster Wheeler naval marine boilers,* and not some other piece of equipment, or land-based boiler. At that point, at least for purposes of determining proper removal, the identity of the specific ship(s), while helpful, becomes irrelevant.

*Mims v. Foster Wheeler Energy Corp.*, 2013 WL 6571816, at *1 n.5 (D. Del. Dec. 12, 2013).

Thus, as in *Mims*, the source Foster Wheeler "cites as being sufficient to put it on notice of a federal defense does not provide the missing information that it now claims was essential to its ability to ascertain the availability of the defense." *Mims v. 84 Lumber Co.*, 2013 WL 4775306, at *5.

Similarly, in *Scearce v. 3M Co.*, the United States District Court for the District of New Jersey granted the plaintiff's motion to remand, finding that the defendant Raytheon's notice of removal was untimely under Section 1446(b)(3). *Scearce*, 2013 WL 2156060, at *5. In support of removal, Raytheon had argued that it only learned that the case was removable during the plaintiff's deposition (taken within thirty days of the removal), in which plaintiff revealed that "'the only specific Raytheon product about which he complains is the AN/TRC-170, a digital troposcatter radio system.'" *Id.* (citation omitted).

The *Scearce* court agreed that, given the breadth of its operations, Raytheon could not have concluded from the amended complaint and an accompanying fact sheet that the AN/TRC-170 was its product at issue in the case. *Id.* However, the court explained that:

> Raytheon has *failed to establish why the company needed to know the specific product in order to ascertain removability*. Unlike the defendants in [other comparable cases],[7] *Raytheon has not stated that it supplied other products to the Air Force that would not have been subject to a federal contractor defense*. Raytheon simply argues that Plaintiffs' allegations were not sufficiently detailed. The Court recognizes that Raytheon very well could have provided various products to the Air Force, some of which would not have justified federal officer

_____

[7] One of the cases cited in *Scearce* was *Bouchard v. CBS Corp.*, 2012 WL 1344388 (E.D. Pa. Apr. 17, 2012). In *Bouchard*, the defendant removed the case to federal court upon learning in deposition testimony that the plaintiff's claims against it related to the plaintiff's work on two particular military ships while at the defendant's work site. *Bouchard*, 2012 WL 1344388, at *3-5. The defendant clearly explained to the district court that "like other federal military contractors, [it] performs activities that are protected by federal contractor immunity, and others that are not." *Id.* at *7. Thus, the defendant sufficiently articulated why "[u]ntil deposition testimony revealed which ships [the plaintiff] had worked on during his employment, [it] could not assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense." *Id.*

> removal. Nevertheless, it is Raytheon's burden [to make that showing] to establish that removal was timely and that it could not have ascertained removability earlier.

*Id.* (emphasis added). The court found that Raytheon did not meet its burden because it failed to link the new information, learned through the plaintiff's deposition, to an explanation of the type of information (not previously provided) that would have allowed it to ascertain the availability of a federal defense. *Id.* Consequently, the case was remanded to state court. *Id. See also Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 334 (D. Conn. 2008) (granting the plaintiff's motion to remand because the defendant's "grounds for removal [were] not traceable to the information confirmed and described" in an expert's report, such that the defendant's "claim that the [expert's] report was the event which triggered removability [was] belied by [its] own submissions"); *Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 154 (D. Me. 2005) ("In order to assert sufficient facts to support a removal notice that is premised on the government contractor defense, [the defendant] need[s] some information tending to establish that *the [plaintiff's] exposure to asbestos related to [the defendant's] product* procured by the government pursuant to a contract that specifically called for the use of asbestos as a component." (emphasis added)).

## V. CONCLUSION

For the foregoing reasons, I recommend that the Plaintiff's Motion to Remand be granted.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 18, 2014

Sherry R. Fallon
United States Magistrate Judge